IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DIANA L. LINDSTROM,                    Case No. 3:14-cv-00602-TC

      Plaintiff,                       OPINION AND ORDER

   v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

      Defendant.

_____

COFFIN, Magistrate Judge:

Plaintiff brings this action pursuant to the Social Security Act (Act) to obtain judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying her application for supplemental security income (SSI) and disability insurance benefits (DIB) under the Act. The Commissioner's decision is affirmed and this case is dismissed.

1 - OPINION AND ORDER

BACKGROUND

On February 14, 2008, plaintiff protectively filed Title II
and Title XVI applications for DIB and SSI. Tr. 19. In both
applications, plaintiff alleged disability beginning May 1,
2002. Id.; Pl.'s Br. 1. The claims were denied initially on
July 31, 2008, and upon reconsideration on March 13, 2009. Tr.
19. A hearing was held on February 5, 2010 and plaintiff's
claims were again denied by decision of an Administrative Law
Judge (ALJ) issued on March 5, 2010. Id. Thereafter, plaintiff
requested review by the Appeals Council, which vacated the prior
decision, remanded the claims, and directed that a supplemental
hearing be held. Id.

The Appeals Council also directed that the ALJ take further
action to complete the administrative record and issue a new
decision with an emphasis on the following:

1) exhibit and consider the February 10, 2010 statement from
plaintiff's psychiatric-mental health nurse practitioner
(PMHNP) Daniel Schroeder;
2) obtain additional evidence concerning the claimant's
mental impairments in order to update the administrative
record;
3) give further consideration to plaintiff's maximum
residual functional capacity (RFC) during the entire
period at issue, provide rationale with specific
references to evidence of record in support of assessed
limitations, and evaluate the treating and examining
source opinions and explain the weight given to such
opinion evidence; and
4) if warranted by the expanded record, obtain supplemental
evidence from a vocational expert (VE) to clarify the

> effect of assessed limitations on plaintiff's
> occupational base and when asking hypothetical questions
> to the VE, ensuring that the questions reflect the
> specific capacity/limitations established by the record
> as a whole.

Tr. 155-56.

In compliance with the above, plaintiff was offered a hearing on May 9, 2012, which she did not attend because she was receiving medical treatment. Tr. 19. Plaintiff did, however, attend a subsequent supplemental hearing on October 18, 2012 and on November 20, 2012 the ALJ again denied her claims. Tr. 34.

In denying plaintiff's claims, the ALJ addressed the Appeals Councils' noted deficiencies in the record. Specifically, the ALJ: 1) considered the February 10, 2010 statements from PMHNP Daniel Schroeder (Tr. 30); 2) obtained additional evidence concerning plaintiff's mental impairments (Tr. 23, 29-32); 3) gave further consideration to plaintiff's RFC, provided specific references to evidence in support of assessed limitations, and explained the weight given to treating and examining source opinions (Tr. 24-33); and 4) obtained evidence from a VE to clarify the effect of plaintiff's limitations on her occupational base (Tr. 19, 26, 33).

## DISCUSSION

Plaintiff argues that the ALJ erred by failing to: 1) provide clear and convincing reasons for rejecting her

3 - OPINION AND ORDER

credibility; 2) adequately explain why he found that her bipolar disorder, migraines, and MRSA were non-severe impairments at step two; 3) properly analyze the medical evidence; 4) find that she met or equaled listing 12.04; and 5) accurately reflect her impairments in the RFC. Pl.'s Br. 5, 14, 25, 26, 29.

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). In reviewing the Commissioner's alleged errors, this court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

I.   Plaintiff's Credibility

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting her credibility. Pl.'s Br. 29.

The ALJ found plaintiff not credible for several reasons. First, the ALJ noted that during the course of her treatment with her mental health counselor Ms. Prowse, LPC, "[plaintiff] admitted to lying about her symptoms for secondary gain, stating that she 'manipulates health issues to get things.'" Tr. 29 (quoting Tr. 856).

Second, the ALJ noted that plaintiff had repeatedly engaged in drug-seeking behavior. Specifically, the ALJ noted that plaintiff had been sentenced to "18 months of probation due to tampering with a morphine prescription." Tr. 31 (citing Tr. 3385). The ALJ also noted an episode on June 11, 2011, where plaintiff requested narcotics to address complaints of skin problems and arm pain, but because she was unable to keep her eyes open and had slurred speech, her request was denied and she was instead offered Tylenol. Id. (citing Tr. 2411). The ALJ noted that plaintiff refused the Tylenol by throwing the pills on the floor and writing profanities on the registration paper before being promptly discharged. Id.

The ALJ noted another drug seeking episode on October 6, 2011, where plaintiff requested morphine to alleviate pain in her legs that was allegedly so severe she could not walk. Tr. 31 (citing Tr. 1289-91). The ALJ noted, however, that "after being told that she would not be receiving any narcotic pain

5 - OPINION AND ORDER

medications, [plaintiff] got angry and . . . jumped up and walked out of the examination room without problem" and before treatment was finished. Id. Similarly, the ALJ noted that ten days later, on October 16, 2011, plaintiff was brought into the emergency room in a wheelchair and claimed to be unable to walk due to right lower leg tenderness. Id. (citing Tr. 2151-53). However, after being told she would not receive any narcotics, plaintiff again walked out of the examination room before treatment was completed. Id.

The ALJ noted another drug seeking episode where plaintiff was hospitalized from November 9, 2011 through November 16, 2011 for complaints of depression with suicidal ideation and during the course of her stay, repeatedly requested narcotic pain medication. Tr. 31 (citing Tr. 1581-1605). However, because plaintiff was observed in the unit to be mobilizing freely without any obvious pain, her request for pain medication was denied. Id. Consequently, plaintiff, then "extremely frustrated," was "observed on security videotape to take a piece of feces from her bathroom and place it under a table in the common room." Id. Critically, plaintiff's treatment provider assessed her behavior to be not "psychotic in nature, but rather . . . volitional out of frustration for her demands for pain medication not having been met." Id. The ALJ noted that

6 – OPINION AND ORDER

plaintiff was again "discharged for her drug seeking and retaliatory behaviors." Id.

Finally, the ALJ noted that plaintiff repeatedly lied to treatment providers about her drug and alcohol use. Specifically, the ALJ noted that during the aforementioned episode on June 11, 2011, where plaintiff was denied narcotics because she had slurred speech and was unable to keep her eyes open, "[plaintiff] denied drinking alcohol even though she was seen in the ER two days prior for alcohol intoxication." Tr. 31 (citing Tr. 2411).

The ALJ noted other instances where plaintiff lied about her drug use. Specifically, the ALJ noted that plaintiff "reported to Dr. Gibby-Smith that she used marijuana from ages 16 to 38, however, a urine drug screen shows that [she] tested positive for marijuana as recently as September 2007," when she was 43. Tr. 29 (citing Tr. 685, 700). Moreover, the ALJ noted that plaintiff testified that she has been clean and sober since April 24, 2012, but upon discharge from the hospital on May 8, 2012, after a 13 day admission for complaints of depression and suicidal ideation, plaintiff's toxicology screen tested positive for cannabis. Tr. 32. Consequently, the ALJ found that "while [plaintiff] testified she has been clean and sober since April

24, 2012, given her admission regarding lying and manipulation, it is difficult to accord her assertions much weight." Tr. 32.

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. Smolen, 80 F.3d at 1284. Moreover, exaggerating complaints of pain in order to receive prescription pain medication provides a

8 - OPINION AND ORDER

clear and convincing reason to conclude that plaintiff was not credible. Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001). The ALJ may employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying and prior inconsistent statements concerning the alleged symptoms. Smolen, 80 F.3d at 1284. If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Here, the ALJ made specific reference to plaintiff admitting that she manipulates health issues to get things and that she lies about her symptoms for secondary gain. Moreover, the ALJ cited several specific examples of plaintiff engaging in such behavior. The ALJ also cited specific examples of plaintiff engaging in drug-seeking behavior, lying to her treatment providers about drug and alcohol use, and not completing treatment after being denied narcotics. While variable interpretations of this evidence may exist, the ALJ's analysis was nonetheless reasonable, such that it must be upheld. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004).

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's

9 - OPINION AND ORDER

subjective symptom statements.  Accordingly, this court need not discuss all of the reasons provided by the ALJ because at least one legally sufficient reason exists.  Carmickle v. Comm'r of Soc. Sec. Admin, 533 F.3d 1155, 1162-63 (9th Cir. 2008).  As such, the ALJ's credibility finding is affirmed.

## II.  Consideration of Plaintiff's Impairments at Step Two

Plaintiff argues that the ALJ erred at step two by failing to adequately explain his rejection of her diagnoses for bipolar disorder, migraine headaches, and MRSA.  Pl.'s Br. 6.  Plaintiff argues that although she did not initially allege disabling limitations due these impairments, "she testified at hearing that MRSA and headaches caused impairment, giving the ALJ notice that said conditions were disabling."  Pl.'s Reply Br. 3-4. Moreover, plaintiff sites multiple instances in the record of her reporting to the hospital and being diagnosed with and treated for the aforementioned impairments, presumably in support of her argument that the ALJ had notice that said impairments were disabling.  Pl.'s Br. 7-14.

The ALJ found that plaintiff "has the following severe impairments: obesity, arthritis of the spine, depression, panic disorder, ADHD, right foot fracture, methamphetamine dependence in remission, marijuana abuse, prescription drug dependence and abuse."  Tr. 22.  The ALJ also found that plaintiff had alleged

10 - OPINION AND ORDER

and been treated for other complaints periodically throughout the records, however, those alleged impairments, "considered singly or together, have caused only transient and mild symptoms and limitations, are well controlled with treatment, have not been present or are not expected to persist for a period greater than 12 months, or are otherwise not adequately supported by the medical evidence in the record." Tr. 22, 24. Moreover, the ALJ noted that plaintiff testified "that her main obstacles to work are problems with focus, anxiety, and back pain." Tr. 24.

The step-two inquiry is a de minimis screening device to dispose of groundless claims. Bowen v. Yuckert, 482 U.S. at 153-54, 107 S.Ct. at 2297-98. At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-41, 107 S.Ct. at 2290-91. "An impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a)(1991). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 140.1521(b); Social Security Ruling (SSR) 85-28.

11 - OPINION AND ORDER

At step two of the inquiry, the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe. Smolen, 80 F.3d at 1289-90. The ALJ is also required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity. SSR 95-5p; 20 C.F.R. § 404.1529(d)(2). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." See SSR 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).

Here, the ALJ noted plaintiff's testimony that her main obstacles to work are problems with focus, anxiety, and back pain and found that she suffered from severe impairments related to said complaints, including arthritis of the spine, depression, panic disorder, and ADHD. The ALJ also found that plaintiff suffered from additional severe impairments including obesity, right foot fracture, methamphetamine dependence in remission, marijuana abuse, and prescription drug dependence and abuse. Moreover, the ALJ noted that plaintiff had alleged and been treated for other complaints throughout the record, but found that those complaints did not create severe impairments,

12 - OPINION AND ORDER

in part, because they were not adequately supported by the medical evidence.

Additionally, although plaintiff cites multiple instances of being diagnosed with and treated for bipolar disorder, migraine headaches, and MRSA, many of plaintiff's citations to the record are inaccurate and, therefore, fail to adequately support her argument that said impairments are severe. For example, plaintiff claims that her treating psychologist Dan Carpenter, Ph.D., diagnosed her with bipolar disorder on August 17, 2004. Pl.'s Br. 6 (citing Tr. 508). However, inspection of Dr. Carpenter's report reveals that he ruled out a diagnoses of bipolar disorder and assessed plaintiff's appearance, attitude, mood, affect, speech, motor activity, thought process, thought content, impulse control, judgment, insight, memory impairment, and attention/ concentration to all be in the "normal" range. Tr. 507-508.

Similarly, plaintiff alleges that she was diagnosed with bipolar disorder by Dr. Karin Nylund, M.D., on November 11, 2009 and Celeste Doneen, MSW, on November 1, 2009. Pl.'s Br. 6. However, the record reveals that Dr. Nylund and Ms. Doneen did not diagnose plaintiff with bipolar disorder, but rather ruled out a diagnosis of bipolar disorder. Tr. 927, 1954-55. Moreover, Dr. Nylund made note of plaintiff's substance abuse

13 - OPINION AND ORDER

problem by noting that "at one point near the end of her hospitalization [plaintiff] was found to have a couple pills of oxycodone in her room." Tr. 928.

Other medical records plaintiff cites as proof of being diagnosed with bipolar disorder also fail to demonstrate an affirmative diagnosis. For example, the only mention of bipolar disorder in the emergency room reports that plaintiff cites from August 29, 2011, and November 8, 2011, are in the history of present illness sections of the reports, which state that plaintiff "questionably [had] bipolar disorder" and that she has a history of "possible bipolar disorder." Tr. 1685; 2629-30. Consequently, these reports not only fail to diagnose bipolar disorder currently, rather, they question whether plaintiff ever had bipolar disorder in the past.

Finally, the report that plaintiff relies on that Beth Holloway, PMHNP, wrote on January 11, 2012, similarly failed to diagnose plaintiff with bipolar disorder and instead, noted only that plaintiff reported "she was told that she was monopolar and that her ADHD mimics symptoms of bipolar disorder." Tr. 3504. Consequently, this report that plaintiff cites as support of her argument that she was diagnosed with bipolar disorder, actually reveals that she admitted to not actually being diagnosed with

14 - OPINION AND ORDER

bipolar disorder, but rather with ADHD, which as stated above, the ALJ found to be a severe impairment.

With regard to plaintiff's migraine headaches, plaintiff argues that the ALJ failed to "accurately determine the severity of [her] migraine headaches." Pl.'s Br. 7. However, plaintiff later conceded that "it was not clear whether headaches had only a minimal effect on [her] ability to perform basic work activities." Id. at 13.

With regard to plaintiff's MRSA, the medical record reveals that several instances cited by plaintiff in support of her argument that MRSA caused disabling symptoms, reveal that plaintiff self-diagnosed MRSA, was engaged in drug seeking behavior, and ultimately refused medical treatment without explanation. For example, in one instance cited by plaintiff, which was also cited by the ALJ as an example of plaintiff's drug seeking behavior, plaintiff argues that "while psychiatrically hospitalized, she was isolated in her hospital room due to active MRSA." Pl.'s Br. 11 (citing Tr. 1605) (emphasis in original). However, the record reveals that plaintiff was not isolated to her room and was instead "encouraged to attend groups." Tr. 1581. Moreover, the record reveals that plaintiff "only wanted oxycodone for pain," "declined offered hot/cold packs for comfort," "refused

15 – OPINION AND ORDER

antibiosis," and her "focus continue[d] to center on reliance on pain medication." Tr. 1592, 1604.

It wasn't until after several days in the hospital, when plaintiff became "upset with pain med taper," "*report[ed] she has MRSA*," "t[ore] off her band aids and threaten[ed] to contaminate the unit, [and] demand[ed] early doses of bedtime meds," that "contact precautions [were] established." Tr. 1599, 1604 (emphasis supplied). However, even then, plaintiff was not isolated to her room due to active MRSA. Rather, the record reveals that "*[plaintiff] continued to state she required contact precautions for active MRSA and isolated [herself] in [her] room.*" Tr. 1610 (emphasis supplied). Further, as stated above, the ALJ noted that plaintiff was eventually discharged after she "intentionally left feces in paper towels under [the] table in [the] dining room after becoming annoyed at [the] RN the night before" about being tapered off of her pain medication. Tr. 610.

Consequently, because many of plaintiff's citations to the medical record that were meant to put the ALJ on notice of her impairments, were inaccurate, dependent on plaintiff's subjective symptom statements, which as discussed above, the ALJ properly rejected, or displayed drug seeking behavior as noted by the ALJ, plaintiff's argument, which is contingent upon a

16 - OPINION AND ORDER

finding of error on this issue, is without merit.  <u>Bayliss v.
Barnhart</u>, 427 F.3d 1211, 1217-18 (9th Cir. 2005); <u>Stubbs-
Danielson v. Astrue</u>, 539 F.3d 1169, 1175-76 (9th Cir. 2008).  As
such, the ALJ's step two findings are upheld.

III.  <u>Analysis of the Medical Evidence</u>

Plaintiff argues that the ALJ failed to properly evaluate
her prescription drug abuse, as well as the opinions of Daniel
Schroeder, PMHNP, and Dr. Stephen Thomas, M.D.  Pl.'s Br. 16-28.

A. <u>Prescription Drug Abuse</u>

Plaintiff argues that the ALJ erred "in determining that
[her] use or misuse of prescription drugs 'significantly
contributed' to [her] dysfunction and that if she stopped abuse,
her remaining functional limitations would not preclude work."
Pl.'s Br. 19 (<u>citing</u> Tr. 27).  Plaintiff also argues that "even
if the ALJ is correct that substance abuse contributed to [her]
mental dysfunction . . . the ALJ should use caution in making
inferences about functionality, especially where no doctor or
other medical expert provided an opinion to support the ALJ's
conclusion."  Pl.'s Br. 20 (quotations omitted).

The ALJ performed the sequential five step analysis and
found that plaintiff's "substance use disorder  .  .  .
significantly contribute[s] to [her] overall dysfunction and
result[ed] in a [RFC] that precludes all employment" and that

17 - OPINION AND ORDER

"if [she] stopped the substance use . . . there would be a significant number of jobs in the national economy that [she] could perform." Tr. 27, 33. Consequently, the ALJ found that because "the substance use disorder is a contributing factor material to the determination of disability, [plaintiff] has not been disabled . . ." Tr. 34.

In reaching this finding, the ALJ noted that plaintiff claimed to be clean and sober since April 24, 2015 and reported she needed drug rehab for marijuana on April 25, 2012. Tr. 32. The ALJ noted that after "a hospital admission from April 26 through May 8, 2012 . . . [plaintiff's] toxicology screen was positive for cannabis" and "a treatment provider observed that chemical dependency issues remain a primary concern for [plaintiff], stating that 'to the extent that she remains abstinent from alcohol, opiate, and benzodiazepines, as well as cannabis, I feel she will have a much better chance of longer term stability.'" Id. (citing Tr. 3627).

The Contract with America Advancement Act of 1996 amended the Social Security Act and provides that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The ALJ must conduct a drug abuse and

18 – OPINION AND ORDER

alcoholism analysis by determining which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b). However, the ALJ must identify disability under the five step procedure before conducting the drug and alcohol analysis to determine whether substance abuse is material to disability. Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001). If the ALJ finds that the claimant is disabled and there is medical evidence of her drug addiction or alcoholism, then the ALJ must determine if the claimant would still be found disabled if she stopped using alcohol or drugs. Id. If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to her disability. 42 U.S.C. §§ 423(d)(2)(c), 1382c(a)(3)(J).

When evidence exists of a claimant's drug or alcohol abuse, the claimant bears the burden of proving that her substance abuse is not a material contributing factor to her disability. Parra v. Astrue, 481 F.3d 742, 744-45, 748 (9th Cir. 2007). To carry this burden, the claimant must offer evidence that the disabling effects of her impairments would have remained had she stopped abusing drugs or alcohol. Id. at 748-49. Evidence that is inconclusive does not satisfy this burden. Id. at 749.

19 – OPINION AND ORDER

Here, the ALJ performed the sequential five step analysis and found plaintiff disabled based on all of her impairments, including her substance use disorders. However, the ALJ found that plaintiff's substance use disorder is material to the determination of disability and that there would be a significant number of jobs in the national economy that she could perform if she stopped the substance use.

The ALJ reached this conclusion after reviewing the medical evidence and specifically noting the opinion of Dr. Bryan Dixon, M.D., who opined that chemical dependency issues remain a primary concern for plaintiff and that she would have a much better chance of longer term stability if she abstained from drugs. Moreover, as noted above, the ALJ made multiple references throughout his opinion of plaintiff's drug and alcohol abuse and drug seeking behavior. Consequently, because the record contains evidence of plaintiff's substance abuse, plaintiff bore the burden of proving that her substance abuse was not a material contributing factor to her disability. This court finds that plaintiff failed to satisfy this burden. Accordingly, the ALJ's finding that plaintiff's substance use significantly contributed to her dysfunction and that if she stopped the use, her remaining limitations would not preclude work, is supported by substantial evidence and is affirmed.

20 - OPINION AND ORDER

B. Daniel Schroeder's Opinion

The ALJ found that Mr. Schroeder's opinion was only entitled to "some weight" and was viewed with "great caution as clinical findings noted elsewhere in this decision note significant veracity concerns." Tr. 30. The ALJ noted inconsistencies in Mr. Schroeder opinion, such as assessed mental impairments resulting in marked restrictions in activities in daily living, marked difficulties in maintaining concentration, persistence and pace, and moderate difficulties in maintaining social functioning, yet no limitations in plaintiff's ability to understand, remember, or carry out short, simple instructions. Tr. 30.

The ALJ also noted that "it appears that Mr. Schroeder was unaware of [plaintiff's] pulysubstance abuse, as he answered 'not applicable' to the question regarding whether [plaintiff's] substance abuse contributes to any limitations" and he "repeatedly explained that his opinions regarding [plaintiff's] limitations were solely based on [plaintiff's] reports and not based on his own observations." Id.

Moreover, the ALJ noted Mr. Schroeder's clarification statement of February 20, 2010, stating that his prior opinion was based on his observations and the reports of plaintiff's mother, and that he was aware of plaintiff's possible

21 - OPINION AND ORDER

prescription abuse. Notwithstanding, the ALJ found that "given [plaintiff's] report that she does have a habit of lying to her health providers," and is not "100 percent honest about her symptoms," and "given [plaintiff's] mother's report to [her] medical provider that she believed [plaintiff] had been misusing or abusing her psychiatric medications, it is challenging to accord much weight to Mr. Schroeder's assessment as his patient 'manipulates health issues to get things.'" Tr. 30.

An ALJ must explain the weight given to medical opinions. SSR 96-8p; 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii). Although only "acceptable medical sources" can diagnose and establish that a medical impairment exists, evidence from "other sources" can be used to determine the severity of that impairment and how it limits the claimant's function in a work activity. 20 C.F.R. § 404.1513. Non-acceptable medical sources include nurse practitioners. 20 C.F.R. § 404.1513; SSR 06-03p.

An ALJ may reject the opinion of an "other source," including nurse practitioners, who are not acceptable medical sources, for germane reasons. See 20 C.F.R. § 404.1513; Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2011). Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may

22 - OPINION AND ORDER

constitute substantial evidence when it is consistent with other independent evidence in the record. Tonapetyan v. Halter. 242 F.3d 1144, 1149 (9th Cir. 2001); Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989).

Further, a "physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (quoting Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)). An ALJ may reject a physician's opinion if it conflicts with the physician's other findings. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).

Here, the ALJ observed Mr. Schroeder's original statements that his opinion was based on plaintiff's self-reports, which, as stated above, he properly found to be not credible, and that he was unaware of plaintiff's alcohol and substance abuse. The ALJ also noted the statements from Mr. Schroeder's 2011 letter that directly contradicted the aforementioned statements from his previous report. Consequently, this court finds that the ALJ provided germane reasons for rejecting Mr. Schroeder's opinion. Although plaintiff disagrees with the ALJ's interpretation of the medical record, "[w]hen the evidence

23 - OPINION AND ORDER

before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." Batson, 359 F.3d at 1198. As such, the ALJ did not err in granting Mr. Schroeder's opinion only some weight.

C. Dr. Thomas' Opinion

Plaintiff argues that "the ALJ erred in rejecting [Dr. Thomas'] opinions on [her] physical functionality." Pl.'s Br. 22. Specifically, plaintiff argues that substantial evidence does not support a finding that Dr. Thomas' assessment came from her own symptom reports and because "Dr. Thomas' opinions do not differ much from [her] testimony . . . the ALJ's rejection of [his] orthopedic opinions . . . on the basis said opinions conflicted with [her] report, is illogical, and not a clear and convincing reason to discount his opinions." Pl.'s Br. 24.

The ALJ accorded the opinion of consultative examiner, Dr. Thomas, M.D., who opined that plaintiff was "very limited," only "some weight" because "much of the information Dr. Thomas used in making his assessment came from [plaintiff's] own reports of symptoms and limitations," which he found not credible. Tr. 28. The ALJ also noted that the limitations endorsed by Dr. Thomas "were even more severe than the limitations [plaintiff] herself alleged at the hearings." Id. Finally, the ALJ gave "great weight" to the contradicting opinions of Drs. Rullman, M.D.,

24 – OPINION AND ORDER

Kehrli, M.D., and Berner, M.D., who all opined that plaintiff had an RFC for sedentary work, because their opinions were "consistent with a preponderance of the evidence," as well as "with the record as a whole." Tr. 28, 29.

There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ may reject the uncontradicted opinion of a treating or examining physician by providing clear and convincing reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 830-31; Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes, 881 F.2d at 751 (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. Barnhart, 427 F.3d at 1216 (citing Lester, 81 F.3d at 830-31).

Here, the ALJ found that Dr. Thomas' opinion was premised largely on plaintiff's complaints, which as stated above, he properly found not credible. Morgan, 169 F.3d at 602. The ALJ

25 – OPINION AND ORDER

also listed inconsistencies between Dr. Thomas' opinion and the record of plaintiff's testimony.    Finally, the ALJ found that the contradicting opinions of Drs. Kehrli, Berner, and Rullman were more persuasive because they were more consistent with the evidence and the record as a whole.    Consequently, the ALJ provided specific and legitimate reasons that were clear and convincing for discounting Dr. Thomas' opinion.    Accordingly, the ALJ did not err in finding Dr. Thomas only partly credible.

IV.  Listing 12.04 Analysis

Plaintiff argues that the ALJ erred by failing to indicate whether parts A or C of listing 12.4 were met.  Pl.'s Br. 25-26. Moreover, plaintiff argues that "if this court finds that the ALJ improperly weighed [Mr.] Schroeder's opinion evidence, then the ALJ also improperly determined plaintiff failed to meet a listing, since [Mr.] Schroeder indicated 'marked limitations' in activities of daily living [ADLs], and maintaining concentration, persistence, or pace."  Id. at 25.  Finally, plaintiff argues that she had repeated episodes of decompensation, each of extended duration, when she "was hospitalized or in a 'halfway house' four times during a 12 month period for 7, 12, 2, and 78 day periods."

The ALJ found that plaintiff's "mental impairments, including the substance use disorders, do not meet listings

26 - OPINION AND ORDER

12.02, 12.04, 12.06, or 12.09." Tr. 23. Specifically, the ALJ held that the paragraph B and C criteria are not satisfied because "[plaintiff's] mental impairments do not cause at least two 'marked' limitations or one 'repeated' episode of decompensation, each of extended duration." Id. Further, the ALJ found that plaintiff is "independent and capable of functioning outside of a highly supportive arrangement, and there is nothing to suggest that [she] is incapable of handling marginal adjustments." Id.

In determining that plaintiff did not meet listing 12.04, the ALJ referenced testimony from Sally Clayton, Ph.D., from the May 2, 2012 hearing, who testified that the record supported no more than mild impairments in ADLs and social functioning, a moderate impairment in concentration, persistence or pace, and no episodes of decompensation of an extended duration. Id. The ALJ noted that mental health records received between the May 9, 2012, and the October 18, 2012, hearings showed "some increase and exacerbation of symptoms sufficient to conclude that [plaintiff] has a mild impairment in [ADLs], a moderate impairment in social functioning, a moderate impairment in the area of concentration, persistence or pace, and one to two episodes of decompensation of extended duration." Id.

27 - OPINION AND ORDER

In order to qualify as disabled at step three of the evaluation, a claimant must meet or exceed the listed impairments in Appendix 1 to Part 404 of the regulations.   20 C.F.R. § 404.1520(d). In order to meet a listing in Appendix 1 for a mental disorder, a claimant must satisfy criteria in paragraph A of the listings, which medically substantiate the presence of a mental disorder, and the criteria of either paragraph B or C, which describe the functional limitations associated with the disorder that are incompatible with the ability to work.   20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A; Holohan v. Massanari, 246 F.3d 1195, 1203 (9th Cir. 2001).

To satisfy the paragraph B criteria, plaintiff's mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B).   Repeated episodes of decompensation, each of an extended duration, means three episodes within one year, each lasting for at least two weeks. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.01(A)(4).

To satisfy the part C criteria, plaintiff's mental impairments must result in:

28 - OPINION AND ORDER

(1) repeated episodes of decompensation, each of extended duration; or (2) a residual disease . . . that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of one or more years' inability to function outside a highly supportive living arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C).

Here, the ALJ found that plaintiff did not meet criteria B or C of listing 12.04 because she did not have repeated episodes of decompensation, each of an extended duration. As plaintiff notes, she was hospitalized or in a halfway house four times during a twelve month period for seven, twelve, two, and seventy-eight day periods. Accordingly, this court finds that the ALJ did not err by concluding that plaintiff did not have at least three episodes of decomposition, each lasting for at least two weeks during a twelve month period as listing 12.04 requires.

Moreover, as stated above, the ALJ did not err in weighing Mr. Schroeder's opinion evidence. Consequently, this court finds that the ALJ did not err by relying on Dr. Clayton's testimony that plaintiff had only mild and moderate impairments, rather than Mr. Schroeder's opinion that plaintiff had marked limitations in ADLs and in maintaining concentration, persistence, or pace.

29 - OPINION AND ORDER

Finally, no evidence in the record suggests that plaintiff is incapable of functioning outside of a highly supportive arrangement, nor incapable of handling marginal adjustments. Consequently, because plaintiff failed to meet the criteria of paragraph B or C of listing 12.04, this court will not disturb the ALJ's finding that plaintiff's mental impairments do not meet listing 12.04.

## V.   Reflection of Plaintiff's Impairments in the RFC

Plaintiff argues that "the ALJ's RFC findings fail to accurately reflect [her] impairments, and are not supported by substantial evidence." Pl.'s Br. 26. Specifically, plaintiff argues that the ALJ erred by: 1) rejecting the effects of her bipolar disorder, MRSA, and migraine headaches; 2) failing to consider the combined effects of her impairments; 3) omitting impairment related restrictions from the RFC; and 4) failing to limit interaction with supervisors to occasional in the RFC and hypothetical given to the VE. Id. at 27-29.

The ALJ found that "based on all of [plaintiff's] impairments, including the substance use disorders, [plaintiff] has the [RFC] to perform sedentary work," but she also:

> needs a stand a stretch break approximately once an hour . . . is limited to no more than occasional climbing of ramps, stairs, ladders, ropes, and scaffolding, and no more than occasional balancing, stooping, kneeling, crouching, and crawling . . .

> [and] is limited to no more than simple, repetitive
> one to three step tasks requiring no public contact,
> no more than occasional interaction with coworkers,
> and no more than occasional changes in the work
> setting.

Tr. 27. Moreover, the ALJ found that plaintiff's substance use disorder "significantly contribute[s] to [her] overall dysfunction," it renders her "unable to perform these tasks on a consistent basis, and [she] would be expected to miss at least a week of work every two months." Tr. 25, 27. The ALJ found, however, that if plaintiff stopped the substance use, her alleged symptoms "would not be nearly as pronounced and [her] remaining functional limitations would not preclude basic work activity performed on a competitive basis." Tr. 27.

In making this finding, the ALJ "considered all symptoms and the extent to which the[] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Id. The ALJ also relied on testimony of a VE that if plaintiff "stopped the substance use, she would be capable of performing substantial gainful work that exists in the national economy," such as that of an assembly worker, or a packing and sorting worker. Id. at 33.

The RFC is the maximum a claimant can do despite her limitations. See 20 C.F.R. §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a

31 - OPINION AND ORDER

claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony.    SSR 96-8p, available at 1996 WL 374184.    The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. Stubbs-Danielson, 539 F.3d at 1174.    Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE.    Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Here, the ALJ considered all of plaintiff's symptoms that he found were consistent with record and translated her impairments into concrete functional limitations in the RFC.    As discussed above, the ALJ did not err in finding plaintiff's MRSA, migraines, and bipolar disorder to be non-severe impairments because they were not supported by substantial evidence.    Moreover, as stated above, the ALJ properly found that plaintiff's substance use significantly contributed to her dysfunction and that if she stopped the use, her remaining limitations would not preclude work.    Consequently, because the RFC and, by extension, dispositive hypothetical question the ALJ posed to the VE included all the limitations that the ALJ found credible and supported by substantial evidence, this court finds

32 - OPINION AND ORDER

that ALJ did not err by relying on testimony of the VE that plaintiff would be capable of performing substantial gainful work that exists in the national economy if she stopped the substance use.

Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. Barnhart, 427 F.3d at 1217-18 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper."). As such, the ALJ's RFC is upheld.

<u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 20+ day of July 2015.


_____
THOMAS M. COFFIN
United States Magistrate Judge


33 – OPINION AND ORDER